UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>GARY WAYNE TAYLOR,<br><br>   Defendant. | Case No. 17-20791<br>Case No. 18-20094<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING MOTION FOR
COMPASSIONATE RELEASE [34]**

Gary Wayne Taylor pled guilty to possession of a stolen firearm and possession with intent to distribute oxymorphone. (ECF No. 28.)[1] This Court sentenced Taylor to concurrent prison terms of 58 months and 41 months, respectively, on July 11, 2018. (*Id.*) Taylor now moves for compassionate release from prison, arguing that he has a serious medical condition that would put him at risk if he contracted COVID-19. (ECF No. 34.) But this 30-year-old inmate's mild asthma, while housed at a facility with no coronavirus cases, does not satisfy the "extraordinary and compelling" threshold. The Court denies the request without prejudice.

**I.**

Taylor, who is 30 years old and currently incarcerated at FCI Allenwood Low (ECF No. 38-4, PageID.356), is now seeking a sentence reduction under 18 U.S.C. § 3582. He is worried about being infected with the highly contagious novel coronavirus. The virus causes a respiratory disease that can result in serious illness or death. The Centers for Disease Control and Prevention

---

[1] Taylor was sentenced in two cases: No. 17-20791 and No. 18-20094. Taylor filed identical motions for compassionate release in the two cases. The citations here refer to Case No. 17-20791.

(CDC) have identified persons with certain medical conditions, regardless of age, who "might be at an increased risk" for severe illness from COVID-19, including those with "moderate-to-severe asthma." *See People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention, https://perma.cc/7BQG-Z2R3.

According to national medical guidelines, "moderate" asthma consists of "daily symptoms, weekly nighttime awakenings, daily use of preventative medication, some limitation with respect to normal activity, and a Forced Expiratory Volume in One Second (FEV) measurement of between sixty and eighty percent of the predicted value." *United States v. Brown*, No. 19-20202, 2020 WL 2812776, at *3 (E.D. Mich. May 29, 2020). And severe asthma consists of "symptoms throughout the day, as many as seven nighttime awakenings per week, use of preventative medication several times per day, extreme limitation with respect to normal activity, and an FEV measurement of less than sixty percent of the predicted value." *Id.*

Taylor does not indicate the severity of his asthma. His brief says that he has had asthma since he was a child and that he uses an inhaler "1–2 times per week." (ECF No. 34, PageID.285.) Taylor's initial medical records indicate that he was not "formally diagnosed with asthma" but that he has needed to use an inhaler "since using illicit drugs." (ECF No. 39-1, PageID.360.) More recent medical visits indicate that his asthma is "mild intermittent" (ECF No. 39-2, PageID.363), "stable" without having used an inhaler for three months (ECF No. 39-3, PageID.365), and "well-controlled since [he] began working out regularly a few months ago," as of November 2019 (ECF No. 39-4, PageID.368). The May 2020 prescription for the inhaler indicates that it should not be used daily. (ECF No. 35-2, PageID.315.)

Currently, the BOP reports that there are no active cases of COVID-19 at FCI Allenwood Low. *See COVID-19 Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus (last visited August 28, 2020).

## II.

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). As amended by the First Step Act, and upon exhaustion of administrative remedies or the lapse of 30 days from the receipt by the warden of a request for compassionate release, 18 U.S.C. § 3852(c)(1)(A)(i) allows a court to reduce an inmate's sentence if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under § 3553(a) warrant a reduction.

### A.

The statutory exhaustion requirement is mandatory. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Taylor submitted a request to the warden for compassionate release on July 1, 2020, which was denied. (ECF No. 35-1, PageID.311.) The government concedes that Taylor exhausted his administrative remedies. (ECF No. 38, PageID.338.)

### B.

Taylor must demonstrate "extraordinary and compelling reasons" to justify his early release.

Congress has not further defined "extraordinary and compelling." But the commentary to U.S.S.G. § 1B1.13, adopted before the enactment of the First Step Act, does. Application Note 1

3

identifies the following "extraordinary and compelling" circumstances: (A) terminal illness diagnoses or serious medical, physical, or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least 10 years or 75 percent of his sentence; or (C) family-related circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). Then there is a catch-all in section (D), titled "Other Reasons." That section provides that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).

District courts across the country have grappled with whether they can find extraordinary and compelling reasons for compassionate release under subdivision (D) given the prefatory language that suggests the issue is to be determined by the "Director of the Bureau of Prisons." But as another court in this Circuit has explained, the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, "is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." *United States v. Powers*, No. 14-CR-20449, 2020 WL 5046886, at *3 (E.D. Mich. Aug. 26, 2020) (quoting *United States v. Young*, No. 00-cr-00002, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020)). And "[a]lthough it does not appear that any federal circuit court of appeals has addressed this issue, a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons." *Id.* (quoting *Young*, 2020 WL 1047815, at *6).

Courts have found that the novel coronavirus combined with other factors can satisfy the catch-all provision. *See, e.g.*, *United States v. Oliver*, No. 17-CR-20489, 2020 WL 2768852, at *6 (E.D. Mich. May 28, 2020); *Loyd v. United States*, No. 15-CR-20394-1, 2020 WL 2572275, at *2 (E.D. Mich. May 21, 2020); *United States v. Pomante*, No. 19-CR-20316, 2020 WL 2513095, at *6 (E.D. Mich. May 15, 2020); *United States v. Amarrah*, No. 17-CR-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020). As another court in this District explained, "[t]he common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are . . . properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic" or "where the defendants had severe medical conditions which placed them at high risk of coronavirus infection, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020).

Speculative concern about catching COVID is not enough. *See United States v. Raia*, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (providing that a "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission"); *United States v. Smoot*, No. 19-00020, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release.").

Nor is "an asthma diagnosis by itself . . . sufficient to warrant early release under the compassionate release standard." *United States v. Alzand*, No. 18-CR-20703, 2020 WL 2781824, at *3 (E.D. Mich. May 29, 2020) (denying early release to an inmate who "has suffered from asthma since at least 2015 and uses two inhalers daily"). Courts have found that "asthma alone is not a reliable predictor of a dire COVID-19 outcome" under the framework of U.S.S.G. § 1B1.13 cmt. n.1(A). *See Brown*, 2020 WL 2812776, at *3; *see also United States v. Bicy*, No. 17-20256, 2020 WL 4584074, at *2 (E.D. Mich. Aug. 10, 2020) ("[I]t is unclear whether asthma places an individual at a higher risk for severe illness from the virus."); *cf. Amarrah*, 2020 WL 2220008, at *5 (granting release for inmate who suffered from asthma coupled with both diabetes and heart disease).

Here, Taylor has not alleged that his asthma is moderate or severe. Taylor's recent medical records indicate that he uses an inhaler "1–2 times per week if exercising during extremes in weather." (ECF No. 35-2, PageID.313.) But "moderate" asthma consists of "daily symptoms, weekly nighttime awakenings, daily use of preventative medication," and more, and severe asthma requires "symptoms throughout the day." *See Brown*, 2020 WL 2812776, at *3. Taylor's earlier medical records show that he had *not* been diagnosed with asthma, while his most recent records indicate that his symptoms had been "well-controlled" for many months since he had begun to exercise regularly. There is no indication that Taylor's mild asthma, especially "in light of his relatively young age and access to medication," is an illness with an "end of life trajectory." *United States v. Abram*, No. 15-20656, 2020 WL 3097259, at *3 (E.D. Mich. June 11, 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)); *accord United States v. Files*, No. 17-20362, 2020 U.S. Dist. LEXIS 137249, at *8–9 (E.D. Mich. Aug. 3, 2020).

So Taylor has not demonstrated "extraordinary and compelling reasons" to justify his early release. His asthma, which is generally under control, falls short of a "severe, chronic, or terminal condition[] that would warrant release even in the absence of a pandemic." *See Nazzal*, 2020 WL 3077948, at *3. As there are currently no known cases of the virus at FCI Allenwood Low, he also is not "housed at a facility with confirmed cases." *See id.* If Allenwood Low were to face an outbreak of COVID-19 or if Taylor's medical condition were to become severe, the analysis could be different.

### III.

Because Taylor has not demonstrated extraordinary and compelling reasons to reduce his sentence to time served, the Court need not address his dangerousness or the 3553(a) factors. Taylor's motion for compassionate release (ECF No. 34) is DENIED WITHOUT PREJUDICE.

SO ORDERED.

Dated: September 1, 2020

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE